Barbara PARKER, Appellant,

v.

## MAT–SU COUNCIL ON PREVENTION OF ALCOHOLISM AND DRUG ABUSE, Appellee.

### No. S–3442.

Supreme Court of Alaska.

June 21, 1991.

Kenneth W. Legacki, Anchorage, for appellant.

Jean S. Schanen, Eau Claire, Wis., for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This case arises from Barbara Parker's termination from employment as a substance abuse counselor at the Mat–Su Pre–Trial Facility in Palmer. Parker claims that she was wrongfully terminated in violation of her employment contract and that Mat–Su Council on Prevention of Alcoholism and Drug Abuse negligently and in breach of its common law duty of good faith and fair dealing, failed to inform her of her option to continue her insurance coverage following her termination. The superior court granted summary judgment against Parker on both issues. We reverse as to the former issue and affirm as to the latter.

### I.

The Mat–Su Council on Prevention of Alcohol and Drug Abuse (Mat–Su) is an Alaska non-profit corporation which contracted with the Department of Corrections to provide substance abuse counseling to incarcerated persons in the Matanuska–Susitna Valley. Barbara Parker was hired by Mat–Su as a substance abuse counselor on March 1, 1985. She did not have an employment contract, but she was given a

copy of Mat–Su's personnel manual which outlines various disciplinary policies and procedures and provides that involuntary termination will occur only for cause. She also received an informational pamphlet produced by Mat–Su's group health insurance carrier.

Parker worked at the minimum security Goose Bay Correctional Facility until it was closed by the state. She was then transferred to the Mat–Su Pre–Trial Facility. While at Goose Bay, Parker received good performance evaluations; however, complaints arose following her transfer.[1] In response to these complaints Parker's supervisor, Francine Sedovic, initiated several informal discussions with Parker.

Around this time, Parker notified Mat–Su officials that she had mononucleosis. As mononucleosis is a highly contagious disease, Parker's announcement generated concern that she would transmit the illness to her co-workers. Sedovic testified that she asked Parker to take sick leave, but Parker refused. Sedovic subsequently informed Parker that she could either resign or take sick leave until she recovered, then return to work on probationary status. Parker refused to go on probation. On April 30, 1987, Mat–Su's executive director, Lawrence Ross, sent Parker a letter announcing her termination.

Parker filed a complaint against Mat–Su alleging that her termination violated the policies and procedures set forth in Mat–Su's personnel manual, and that Mat–Su had improperly failed to notify her of her option to convert group health insurance to individual coverage following her termination. Both parties moved for summary judgment which the superior court granted to Mat–Su. Parker appeals.

In reviewing a grant of summary judgment, we determine whether there were any genuine issues of material fact and whether the parties were entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c); *Zemen v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985) (citing *Brock v. Alaska International Industries*, 645 P.2d 188, 190 n. 6 (Alaska 1982)). In doing so, we will draw all reasonable inferences in favor of the non-moving party. *Alaska Rent–A–Car, Inc. v. Ford Motor Co.*, 526 P.2d 1136, 1139 (Alaska 1974).

## II.

Mat–Su's personnel manual identifies numerous disciplinary actions including verbal warnings, probation, and involuntary termination and defines specific procedures for undertaking each action. The manual also identifies specific causes for termination.[2] Parker contends that in taking disciplinary action against her, Mat–Su did not comply with its personnel manual. Consequently, she claims that her termination constituted a breach of her employment contract.

When the provisions of a personnel manual create the reasonable expectation that employees have been granted certain rights, the employer is bound by the representations contained in those provisions. *Jones v. Central Peninsula General Hospital*, 779 P.2d 783, 788 (Alaska 1989). Although generally it is a question of fact whether the manual did modify the

---

**1.** Complaints were addressed to Parker's supervisor, and to Mat–Su's executive director. The primary source of concern was Parker's seeming job dissatisfaction and difficulty getting along with the guards at the prison and some of her co-workers.

**2.** The personnel manual states that employees may be involuntarily terminated for any one of the following three causes:
   a. failure to abide by written Board policy or activity in opposition to the stated aims or goals of the agency ( [t]his differs from suspension in that there is no question that this occurred);

b. [i]nappropriate behavior including but not limited to:
   1. use of alcoholic beverages on the premises of the agency
   2. appearing for work under the influence of alcoholic beverages, unprescribed habit-forming drugs or hallucinogenic materials[ ]
   3. fighting or attempting to injure others
   4. falsifying or misusing records including applications
   5. breach of confidentiality;
   c. failure to meet the terms of probation (performance evaluation of disciplinary). [sic]

employment agreement, *Jones*, 779 P.2d at 787, in this case the manual's existence, contents, and distribution to Parker prior to her termination are not disputed. Mat–Su does not seriously challenge Parker's assertion that the manual applied to her. Therefore, we conclude that the personnel manual did modify Parker's employment agreement.

■ Executive Director Ross' termination letter listed all three grounds enumerated in the manual as justification for Parker's termination, although any one of them would have been sufficient.[3] Although Ross' letter facially satisfied the requirements of Mat–Su's personnel manual, Parker asserts that she was not in fact accorded the protection guaranteed by the manual. First, she claims that, because Mat–Su failed to comply with the technical requirements for placing an employee on probation, her refusal to go on probation could not be considered a cause for termination.[4] We agree. Sedovic's testimony is somewhat inconsistent, but it is clear that she failed to give Parker written documentation outlining specific reasons for her insistence that Parker go on probation. She similarly failed to explain the requisite conditions for Parker's removal from probation.[5] This information is specifically required by the manual.[6] Thus, Parker was clearly within her rights to request a written specification before making the decision to go on probation. Furthermore, since Mat–Su failed to properly impose probation, it cannot cite Parker's refusal to accept probationary status as a ground for termination. We conclude that Parker's refusal to accept probation under these circumstances was an insufficient cause for termination as a matter of law.

■ Parker next contends that the other reasons given for her termination, failure to abide by agency policies and procedures and unsatisfactory job performance, were pretextual. She cites Sedovic's deposition which states that Parker was terminated because she refused to accept probation. This testimony alone creates a material

3. Pertinent portions of Ross' letter to Parker state:
   Your employment as an Inmate Substance Abuse Counselor with this organization is hereby terminated, effective immediately, for the following causes:
   1) You have repeatedly failed to abide by agency policies and procedures regarding complaints and grievances, the reporting of problems and activities to your immediate supervisor, and in relation to the standard of employee conduct which requires that you 'refrain from any action and avoid any kind of public pronouncement which reflects adversely upon the agency.'
   2) Unsatisfactory performance of your assigned responsibilities, and unprofessional, highly inappropriate behavior and attitude regarding your work and working relationships with co-workers.
   3) Your continuing resistance and/or refusal to accept the direction and supervision of your supervisor, Fran Sedovic, or myself, in relation to your performance and attitude over the past four months, as well as your recent refusal to accept probation as a means for resolving these problems.

4. Parker also argues that Mat–Su's stated disciplinary policy is to inform employees of the rules by which they must abide, and that Mat–Su's failure to give her a formal verbal warning prior to terminating her was an additional violation of the procedures set forth in the manual. However, the manual states unambiguously that disciplinary measures need not be imposed in any particular order. Although it would seem equitable for Mat–Su to make a general practice of taking less severe disciplinary action prior to termination, the manual makes no representation to this effect. Therefore, Mat–Su's failure to give Parker a verbal warning prior to termination is not inconsistent with its personnel manual and was not a breach of Parker's employment contract.

5. Sedovic gave Parker a memorandum on April 24, 1987 notifying Parker that Mat–Su requested her resignation. The memorandum further stated that, if she refused to resign, she could return to work but she only if she agreed to accept probationary status. Although the memorandum outlined some reasons for Mat–Su's action, it did not itemize specific reasons, nor did it state the conditions Parker would have to meet to be reinstated in a nonprobationary status.

6. The personnel manual states:
   *Disciplinary Probation.*
   1. Probation is in writing, signed by the employee with a copy given to the employee and must contain both:
   a. the specifics of the conduct for which the employee is being placed on probation, and
   b. the specific criteria which must be met for the employee to get off probation.

question of fact as to whether the first two reasons given in Ross' letter were merely pretexts.[7] Therefore, whether the bases Mat–Su asserted, other than Parker's refusal to go on probation, were the true reasons for her termination is a jury question. *See Jones,* 779 P.2d 783, 789 (the question of whether an employee is terminated for cause or "was really discharged for another reason ... is one ... for the [trier of fact]") (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 896 (1980)).

Accordingly, we reverse the superior court's grant of summary judgment in favor of Mat–Su on the issue of wrongful termination, and remand for further proceedings in accordance with this opinion.

### III.

■ The second issue before the court concerns Parker's assertion that Mat–Su had a duty to notify her of her right to obtain continuing medical and life insurance coverage through Mat–Su's group insurance plan following her termination. She claims that this obligation arises from a common law duty of good faith and fair dealing implied in her employment contract. *See City of Kenai v. Ferguson,* 732 P.2d 184 (Alaska 1987).

Although Parker concedes that Mat–Su did not have a statutory obligation to notify employees of their continuation privileges, she suggests that statutorily created requirements pertaining to health plans for certain employees define the standard of care by analogy.[8] Under these statutes, when an event occurs which will result in the loss of coverage, the administrator of a group health plan is required to notify beneficiaries of their option to continue their coverage under the plan. 42 U.S.C. § 300bb–3, § 300bb–6(4); 29 U.S.C. § 1163, § 1166(a)(4). While it is our view that the duty of good faith and fair dealing require employers to notify employees of their continuation privileges, we believe that this common law duty is satisfied by providing reasonable notice of such privilege. We decline to expand the common law duty by applying a standard of care which the legislature clearly deemed appropriate only in specific circumstances to all employers. See *infra,* n. 8.

At the time Parker was hired, she was given a pamphlet which described an employee's right to continue his or her insurance coverage following termination. We are persuaded that distribution of this pamphlet satisfied Mat–Su's common law duty of good faith and fair dealing. Therefore, there was no genuine issue of material fact as to whether Mat–Su gave Parker adequate notice of her right to continue her insurance coverage. Accordingly, we hold that summary judgment in favor of Mat–Su was appropriate on this issue.

REVERSED in part, AFFIRMED in part and REMANDED.

---

**7.** Parker also relies on performance evaluations and references which may cast doubt on the legitimacy of Ross' second stated cause for her termination, unsatisfactory performance of assigned responsibilities. *See supra,* n. 3.

**8.** The statutory provision to which Parker refers, the Consolidated Omnibus Budget Reconciliation Act, 42 U.S.C. § 300bb–1 (COBRA), applies to state governmental entities, rather than nonprofit corporations such as Mat–Su. The provisions which arguably would cover entities such as Mat–Su are part of the Employee Retirement Income Security Act, 29 U.S.C. § 1161(b) (ERISA). Neither ERISA nor COBRA is applicable to group health plans which employ less than twenty employees on a typical business day during the preceding year. The record contains uncontroverted evidence that in the year prior to Parker's termination Mat–Su employed an average of 13.5 employees. Therefore, there can be no question that these provisions are not applicable to Mat–Su.