Patricia K. HOENDERMIS, Appellant/Cross– Appellee,

v.

ADVANCED PHYSICAL THERAPY, INC., d/b/a Advanced Physical Therapy of Alaska; Advanced Pain Therapeutics of Alaska, LLC, d/b/a Advanced Physical Therapy of Alaska; and Valerie Phelps, Appellees/Cross–Appellants.

Nos. S–13462, S–13481.

Supreme Court of Alaska.

April 29, 2011.

Rehearing Denied July 7, 2011.

---

Kenneth W. Legacki, Anchorage, for Appellant.

John S. Hedland, Hedland, Brennan and Heideman, Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

# I. INTRODUCTION

Advanced Physical Therapy (APT) terminated the employment of Patricia Hoendermis ("Patti"), the clinic's practice administrator, for an inability to communicate with her co-workers and supervisor. Hoendermis sued APT for wrongful termination and failure to provide overtime compensation. The superior court granted APT summary judgment on both claims. Hoendermis appeals. We reverse the grants of summary judgment because there are genuine issues of material fact regarding both claims.

# II. FACTS AND PROCEEDINGS

## A. Hoendermis's Job Responsibilities

Patti Hoendermis became an APT employee in October 2000. Hoendermis's initial job title was "practice manager." It was changed to "practice administrator" in an internal restructuring in November 2005.

Valerie Phelps has been the president of APT since Hoendermis was hired. Phelps asserted in an affidavit that Hoendermis acted as an administrative or executive employee throughout her tenure at APT, spending at least 80 percent of her time managing the clinic. Phelps stated that Hoendermis's job responsibilities included creating a policy and procedure manual, securing bank loans and lines of credit, putting together APT's insurance package and pension fund, working with APT's lawyer on contracts, working with APT's accountant on taxes, and researching and leasing office space and equipment. Phelps stated that she started taking away Hoendermis's responsibilities with respect to the clinic's finances and budget in November 2005 because Hoendermis made so many mistakes in those areas.

Phelps also asserted that Hoendermis, at least until November 2005, managed APT's administrative employees. In a deposition, Phelps testified that by November 2005 Hoendermis no longer supervised other employees but did act as a "go-to person" for questions. However, in an affidavit, Phelps asserted that Hoendermis "regularly directed the work of the clinic's nonprofessional (administrative) staff" and did not state that these responsibilities ended in November 2005.

Hoendermis disputed Phelps's description of her job responsibilities. She asserted in her affidavit that she performed "bookkeeping and secretarial duties" and at least 50 percent of her time was spent "doing clerical kinds of things" like note-taking, bookkeeping, ordering supplies, and unplugging the toilet. She stated that she lacked any managerial or decision-making power and did not supervise any staff.

## B. The Policy And Procedure Manual

All employees at APT were subject to APT's Policy and Procedure Manual. The manual specified that all APT employees were employed at will, and that "the company may end the employment relationship at any time, with or without cause, with or without advance notice." It also provided that "[e]mployees terminated for misconduct may be discharged immediately, without advanced notice."

The manual described a progressive disciplinary action plan that included verbal counseling, a first written warning, a second written warning, and discharge. Before describing the steps for progressive discipline, the manual specified that APT "reserves the right to determine in its sole and unlimited discretion when and if progressive discipline will be used and always reserves the right to discharge employees without cause and/or previous notice." After describing the progressive discipline steps, the manual provided that "[w]hether and to what degree progressive discipline will be used is always subject to the unlimited discretion of [APT] management. For example, there may be extraordinary circumstances (malicious destruction of property, theft, dishonesty, etc.) that would warrant immediate discharge without prior suspension or prior verbal or written warning."

### C. Hoendermis's Termination

APT terminated Hoendermis's employment on January 10, 2006 as a result of Phelps's perception that Hoendermis was unable "to work effectively with or get along with other individuals employed in the clinic" and that Hoendermis had failed "to take the necessary steps to resolve the problem."

The immediate precipitating event was an argument about invoices that occurred the week before between Hoendermis and Lynn Crockett, APT's part-time bookkeeper. After the argument Hoendermis left the office for approximately two hours. Phelps asserted that when she asked Hoendermis to discuss the incident with her, Hoendermis refused to speak with Phelps when Phelps was available. Hoendermis asserted that she did not refuse to speak with Phelps.

Phelps described other problems that Hoendermis had working with others. She stated that Hoendermis would get upset with other employees and "continually go after" them, complaining about them to other employees at the expense of her work. Hoendermis complained frequently to Phelps about her problems with other employees. Phelps asserted that she discussed these problems with Hoendermis several times over a matter of years.

After her termination Hoendermis filed for unemployment insurance benefits with the Alaska Department of Labor and Workforce Development, but was denied. She appealed the denial to the department's appeal tribunal. In March 2006 the appeal tribunal affirmed the denial of benefits, concluding that Hoendermis was discharged for misconduct because she continued to get into arguments with co-workers after Phelps asked her to stop.

### D. Procedural History

In May 2006 Hoendermis filed a complaint in the superior court alleging that she had been wrongfully terminated in violation of APT's policy manual, which she asserted was a contract, and in violation of the covenant of good faith and fair dealing. She also alleged that APT had failed to pay her overtime compensation in violation of state and federal law.

On June 23 APT moved for summary judgment. It argued that Hoendermis was not eligible for overtime compensation because she was an executive or administrative employee. It also argued that Hoendermis was an at-will employee and that the policy manual expressly allowed APT to dismiss employees with or without cause. APT argued that Hoendermis was collaterally estopped from claiming wrongful termination because the Department of Labor and Workforce Development found that she had been dismissed for misconduct. It also argued that Hoendermis did not present any evidence showing that APT violated the covenant of good faith and fair dealing.

Hoendermis filed an opposition to the motion for summary judgment and a cross-motion for summary judgment. She alleged that APT did not afford her progressive discipline as required in the policy manual. She also alleged that she was disparately treated in violation of the covenant of good faith and fair dealing because other employees committed more serious infractions than she did, including assault and inappropriate intimate interactions with patients, but they were not terminated. She further alleged that she was not an administrative or executive employee and was thus eligible for overtime compensation.

At a hearing on August 18, 2008, the superior court granted complete summary judgment to APT. The court found that Hoendermis had not raised any genuine issue of material fact suggesting that she was not an administrative or executive employee and therefore entitled to overtime compensation. It also found that (1) APT had not wrongfully terminated Hoendermis because she was an at-will employee, (2) APT was not required to offer Hoendermis progressive discipline, and (3) Hoendermis had not presented evidence of disparate treatment that should have been presented to a jury.

On August 20 APT filed a motion for attorney's fees pursuant to Civil Rule 68(b)(1) based upon a one dollar offer of judgment that APT made on June 16, 2006, shortly after Hoendermis filed her original com-

plaint. APT alternatively requested fees pursuant to Civil Rule 82(b)(2). The superior court denied APT's request for Rule 68 fees, but granted its request for Rule 82 fees.

The court entered a final judgment in favor of APT.

Hoendermis appeals, asserting that the superior court erred in granting summary judgment because there were material factual disputes for both her overtime compensation claim and wrongful termination claim.

APT cross-appeals, asserting that the superior court erred in failing to award it Rule 68 attorney's fees.

## III. DISCUSSION

### A. Standard Of Review

■ We review a superior court's grant of summary judgment de novo.[1] In our review, we must determine "whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[2] We draw all factual inferences in favor of, and view the facts in the light most favorable to, the party against whom summary judgment was granted.[3]

### B. It Was Error To Grant APT Summary Judgment On The Overtime Compensation Claim.

■ The Alaska Wage and Hour Act (AWHA) governs the payment of overtime.[4] AWHA does not apply to bona fide executive or administrative employees.[5] An administrative employee is one

(A) whose primary duty consists of work directly related to management policies or supervising the general business operations of the employer;

(B) who customarily and regularly exercises discretion and independent judgment;

(C) who performs work only under general supervision;

(D) who is paid on a salary or fee basis;

(E) who regularly and directly assists a proprietor or an exempt executive employee of the employer; and

(F) who performs work along specialized or technical lines requiring special training, experience or knowledge and does not devote more than 20 percent ... of the employee's weekly hours to activities that are not described in this paragraph or (7) or (11) of this section.[6]

An executive employee is one

(A) whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized branch, department, or subdivision of the enterprise;

(B) who customarily and regularly directs the work of two or more other employees;

(C) who has the authority to hire or fire or effect any other change of status of other employees or whose suggestions or recommendations regarding these kinds of changes are given particular weight;

(D) who customarily and regularly exercises discretionary authority;

(E) who does not devote more than 20 percent ... of the employee's weekly hours to activities that are not directly and closely related to the work described in this paragraph or (1) or (11) of this section; and

(F) who is compensated on a salary basis.[7]

1. *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995) (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 (Alaska 1994)).

2. *Id.* (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

3. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984)).

4. AS 23.10.050–.150.

5. AS 23.10.055(a)(9)(A).

6. Former 8 Alaska Administrative Code (AAC) 15.910(a)(1) (repealed 2008, Reg. 185). Paragraph (7) defines "executive employee," and paragraph (11) defines "professional employee."

It does not appear that a replacement regulation has been adopted, so we may discuss 8 AAC 15.910(a)(1) (as well as 8 AAC 15.910(a)(7), *see infra* note 7) as if it remains in effect. *See Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1023 n. 8 (Alaska 2005).

7. Former 8 AAC 15.910(a)(7) (repealed 2008, Reg. 185).

Hoendermis argues that the superior court failed to consider the evidence she set forth supporting her claim that she was not an administrative or executive employee.

■ We must decide if there is a genuine issue of material fact whether Hoendermis was an administrative or executive employee and consequently not entitled to overtime compensation under AWHA. We must construe the evidence in the light most favorable to Hoendermis because the superior court granted summary judgment against her.[8] An employee must meet all of the requirements established in the definitions of administrative or executive employees in order to be exempt from AWHA; an issue of material fact as to only one of the requirements is sufficient to defeat summary judgment on the overtime compensation claim.[9]

■ In its summary judgment motion, APT has the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.[10] Upon this initial showing, the burden shifts to Hoendermis, who then must "set forth specific facts showing genuine issues and cannot rest on mere allegations."[11] The parties can submit affidavits supporting or opposing a motion for summary judgment provided they are "based upon personal knowledge."[12]

APT established a prima facie case that Hoendermis was an administrative or executive employee by presenting sworn factual assertions regarding each requirement. These, along with Hoendermis's disputing sworn factual assertions, are discussed below.

■ In her affidavit supporting APT's motion for summary judgment, Phelps asserted that Hoendermis's responsibilities were primarily managerial,[13] including directing administrative staff and overseeing "all aspects of clinic operation." Hoendermis presented conflicting material facts. She asserted in her affidavit supporting her opposition to APT's motion for summary judgment that by November 2005 her "primary duties were no longer related to management policies" because Phelps had gradually removed her from management. She stated that she did not supervise any employees and did not advise Phelps on financial or other aspects of the business. APT, in its reply to Hoendermis's opposition to summary judgment, pointed out that Hoendermis referred to herself as a practice manager or administrator in business letters sent after the November 2005 reorganization. APT also referred to Hoendermis's post–APT resume, in which she referred to her position at APT as "practice manager" and described her managerial experience. Hoendermis's use of the "practice manager" job title is not determinative. Federal labor regulations provide that "[a] job title alone is insufficient to establish the exempt status of an employee," which "must be determined on the basis of whether the employee's salary and duties meet the requirements" for exempt status.[14] Hoendermis's description of managerial experience on her resume is also not determinative because it could have referred to her work before November 2005. Hoendermis raised a genuine issue of material fact on the issue whether her job responsibilities were primarily managerial.

**8.** *See Am. Rest. Grp. v. Clark*, 889 P.2d 595, 597 (Alaska 1995).

**9.** *See Whitesides v. U–Haul Co. of Alaska*, 16 P.3d 729, 735 (Alaska 2001).

**10.** *See Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002).

**11.** *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (quoting *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 144 (Alaska 1991)).

**12.** *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991).

**13.** *See* former 8 AAC 15.910(a)(1)(A); former 8 AAC 15.910(a)(7)(A).

**14.** *See* 29 C.F.R. § 541.2 (2005). These federal regulations are not binding in Alaska, but may be adopted here. *See* AS 23.10.095 ("The commissioner [of the Department of Labor and Workforce Development] may adopt regulations and interpretations that are made by the administrator of the Wage and Hour Division of the federal Department of Labor and that are not inconsistent with AS 23.10.050–23.10.150.").

Phelps asserted in her affidavit that Hoendermis exercised discretion and independent judgment,[15] "regularly direct[ing] the work of the clinic's nonprofessional (administrative) staff ..., monitoring and making reports regarding financial issues of the clinic and had general oversight of all aspects of clinic operation." Hoendermis presented a genuine issue of material fact, asserting in her affidavit that she did not exercise discretion or independent judgment. She stated that she did not make financial decisions, had no authority to change leases, and could not discipline, hire, or fire employees.

■ Phelps asserted in her affidavit that Hoendermis was paid on a salary.[16] Hoendermis asserted in her opposition to summary judgment that the fact that she had to keep track of her time on a time card was "inconsistent with exempt status." We have held that an employee was treated as an hourly rather than a salaried employee when he was subjected to "a rigid hourly schedule" and the employer "strictly enforc[ed] that schedule with severe disciplinary sanctions."[17] This is not the case here. Hoendermis did keep track of which days she worked on a time sheet, but she did not maintain that she was held to a rigid schedule, and Phelps stated in her deposition that her employees were self-managed. Hoendermis's time sheets did not establish an issue of material fact on the issue of salary.

Phelps asserted in her affidavit that if Hoendermis "devoted any of her work time to matters other than administrative or executive functions, it was less than 20%."[18] Phelps also asserted in her affidavit that Hoendermis's work "required special experience and knowledge in areas of business management, bookkeeping and accounting, and legal areas." Hoendermis asserted in her affidavit that at least 50 percent of her day was spent doing clerical work. We have held that similar conflicting factual assertions as to managerial/non-managerial time allocation created a genuine issue of material fact.[19] Hoendermis's assertion created an issue of material fact concerning the allocation of her time.

Phelps asserted in her affidavit that Hoendermis regularly directed the work of the clinic's nonprofessional staff.[20] Hoendermis presented an issue of material fact, stating in her affidavit that she did not supervise the administrative employees and pointing to Phelps's assertions in her deposition that Hoendermis did not supervise anyone beginning two months before her termination.

Phelps stated in her affidavit that Hoendermis "had responsibility for hiring and firing administrative staff and made recommendations to [Phelps] concerning raises."[21] Hoendermis countered, asserting in her affidavit that Phelps "evaluated all of the administrative staff's work, decided on raises, and made all decisions on the hiring and firing of those employees." APT, to refute Hoendermis's assertion, pointed to e-mails in which Hoendermis communicated with potential employees, scheduling interviews and making offers. The most recent e-mail was dated June 17, 2005, however, well before November 2005 when Phelps removed Hoendermis from many of her responsibilities and well before Hoendermis's termination in January 2006. The e-mails do not preclude Hoendermis from establishing a genuine issue of material fact regarding her nonexempt status for up to six months prior to her termination. Hoendermis presented an issue of material fact regarding her hiring and firing responsibilities.

Phelps asserted in her affidavit that Hoendermis only worked under Phelps's general

---

**15.** For the definition of an administrative employee, *see* former 8 AAC 15.910(a)(1)(B); former 8 AAC 15.910(a)(7)(D).

**16.** *See* former 8 AAC 15.910(a)(1)(D); former 8 AAC 15.910(a)(7)(F).

**17.** *Whitesides,* 16 P.3d at 734.

**18.** *See* former 8 AAC 15.910(a)(1)(F); former 8 AAC 15.910(a)(7)(E).

**19.** *See Am. Rest. Grp.,* 889 P.2d at 597 (finding genuine issue of material fact as to percentage of work week spent performing non-executive duties when parties claimed differing percentages).

**20.** *See* former 8 AAC 15.910(a)(7)(B).

**21.** *See* former 8 AAC 15.910(a)(7)(C).

supervision.[22] Hoendermis did not contest this.

Phelps asserted in her affidavit that Hoendermis regularly and directly assisted her.[23] Hoendermis did not contest this.

From the affidavits and other evidence submitted by both parties, there are several genuine issues of material fact that preclude summary judgment. Deciding whether Hoendermis is entitled to overtime compensation will depend on weighing the credibility and persuasive strength of the parties' witnesses and evidence: this is the responsibility of the fact finder.[24] We reverse the grant of summary judgment on the overtime compensation claim.[25]

### C. It Was Error To Grant APT Summary Judgment On The Wrongful Termination Claim.

### 1. The Department of Labor decision does not preclude Hoendermis's claim.

■ APT argues that Hoendermis is collaterally estopped from asserting that she was wrongfully terminated because the Department of Labor and Workforce Development found that she was terminated for misconduct. Hoendermis argues that the department's decision does not have a collateral estoppel effect on her case because the department did not address all of the issues involved in the current case, and also that collateral estoppel should not apply to deci-

sions from her unemployment compensation proceedings because those proceedings did not provide enough incentive to fully litigate the issues.

■ We may consider collateral estoppel as a basis for summary judgment even though the superior court did not base its summary judgment decision on those grounds.[26]

■ The decisions of administrative agencies can collaterally estop, or preclude, issues from relitigation in a judicial setting if the issue to be precluded is identical to the issue decided by the administrative agency.[27] However, collateral estoppel analysis "would not apply if the amount at stake in the present case differ[s] substantially from that in the [earlier] proceeding."[28] This is because the stakes in an unemployment compensation proceeding may be substantially less than those involved in a wrongful termination lawsuit, and this difference may be sufficient to render collateral estoppel from such agency determinations inappropriate. But we do not decide that question here.

We have held that the issue of employee misconduct considered by the Department of Labor is different than the issue of wrongful discharge.[29] The department only determines whether an employee is eligible for benefits; it does not examine the employer's

---

22. *See* former 8 AAC 15.910(a)(1)(C).

23. *See* former 8 AAC 15.910(a)(1)(E).

24. *See Whitesides v. State, Dep't of Pub. Safety, Div. Of Motor Vehicles,* 20 P.3d 1130, 1136–37 (Alaska 2001).

25. Because we are reversing the grant of summary judgment on the overtime claim, we do not need to decide whether APT's Rule 68 offer of judgment was valid. The superior court, however, correctly foresaw our decision in *Beal v. McGuire,* 216 P.3d 1154 (Alaska 2009), and properly applied the factors described therein for evaluating Rule 68 offers.

26. *See Sopko v. Dowell Schlumberger, Inc.,* 21 P.3d 1265, 1269 (Alaska 2001) ("We are not bound by the reasoning articulated by the lower court, and we can affirm a grant of summary judgment on alternative grounds, including

grounds not advanced by the lower court or the parties.") (internal citations omitted).

27. *See Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 906 (Alaska 1991) (internal citations omitted). We have also emphasized, however, that although the decision to apply collateral estoppel is discretionary, "this discretion must be tempered by principles of fairness in light of the circumstances in each particular case." *Misyura v. Misyura,* 242 P.3d 1037, 1040 (Alaska 2010) (quoting *Borg–Warner Corp. v. Avco Corp. (Lycoming Div.),* 850 P.2d 628, 635 (Alaska 1993)).

28. *Sengupta v. Univ. of Alaska,* 21 P.3d 1240, 1250 n. 29 (Alaska 2001).

29. *See Manning v. Alaska R.R. Corp.,* 853 P.2d 1120, 1124 (Alaska 1993); *Luedtke v. Nabors Alaska Drilling, Inc. (Luedtke I),* 768 P.2d 1123, 1131 n. 5 (Alaska 1989).

culpability.[30] In the case at hand, the department determined that Hoendermis was not eligible for full benefits due to misconduct. Hoendermis contends here that "[e]ven assuming that ... [she] was at fault and committed misconduct at work," APT breached the covenant of good faith and fair dealing. The department did not address this issue in its adjudication. The department's decision that Hoendermis committed misconduct therefore does not preclude a court from examining Hoendermis's breach of covenant of good faith and fair dealing claim.

### 2. The policy manual did not guarantee progressive discipline.

■ Hoendermis argues that she was wrongfully terminated as a matter of law because APT failed to provide her with progressive discipline in violation of the procedure laid out in its policy manual. She asserts that APT is bound by Alaska law to follow the manual's requirements when an employee has a reasonable expectation that the procedures will be followed, and she had that expectation.

APT responds that the manual expressly provided that all APT employees were employed at will and could be discharged for any reason, and that the use of progressive discipline was within APT's unfettered discretion.

We have held that "employee policy manuals may modify at-will employment agreements, and that whether a given manual has modified an at-will employment agreement must be determined on the particular facts of each case."[31] The employer is bound by the representations in the manual when the manual's provisions "create the reasonable expectation that employees have been granted certain rights."[32] In general, we have held that

policy manuals modify at-will employment contracts and create rights for the employee when the manuals specifically state that the employee can only be terminated for cause.[33]

In *Holland v. Union Oil Co. of California*, we examined an employer's policy memorandum that described a system of progressive discipline but left the employer with the discretion to skip any disciplinary steps.[34] The memorandum provided a non-exclusive list of non-permitted activity and contained hedging terms such as "can result" and "steps in the progressive discipline system may be bypassed."[35] We concluded that the language did not bind the employer to any disciplinary procedure, and that "as a matter of law, the memo could not create a reasonable expectation that employees have been granted certain rights."[36]

In its motion for summary judgment, APT established a prima facie case that its policy manual did not guarantee Hoendermis progressive discipline. As evidence, it pointed to the language within the policy manual describing the discretionary nature of progressive discipline.

Hoendermis argued in her opposition to summary judgment that APT was bound by the manual to provide progressive discipline because she had a reasonable expectation that she would receive it. Citing Phelps's deposition testimony that Hoendermis wrote the policy manual, Hoendermis argued that as the employee most familiar with the manual, she was in the best position to interpret it. Hoendermis asserted that she reasonably expected progressive discipline because others had received it and because APT's attorney told her that progressive discipline was mandatory.

Hoendermis's arguments fail to establish a reasonable expectation of progressive disci-

---

30. *Manning*, 853 P.2d at 1125.

31. *Holland v. Union Oil Co. of Cal.*, 993 P.2d 1026, 1030 (Alaska 1999) (quoting *Jones v. Cent. Peninsula Gen. Hosp.*, 779 P.2d 783, 787 (Alaska 1989)).

32. *Parker v. Mat–Su Council on Prevention of Alcoholism and Drug Abuse*, 813 P.2d 665, 666 (Alaska 1991).

33. *See, e.g., Jones*, 779 P.2d at 785, 787; *Parker*, 813 P.2d at 666–67.

34. *Holland*, 993 P.2d at 1032.

35. *Id.*

36. *Id.* (quoting *Parker*, 813 P.2d at 666) (internal quotation marks omitted).

pline. Her assertion that she was very familiar with the manual informs us that she was familiar with the entire manual: not only the progressive discipline steps, but also the statements directly preceding and following the steps which clearly stated that APT retained unlimited discretion in deciding whether to provide progressive discipline. Hoendermis's expectations arising from her observations of others and her alleged conversation with APT's attorney[37] do not change the fact that the manual itself did not create a reasonable expectation of a right to progressive discipline.

This case is very similar to *Holland*, and we hold, as we did in *Holland*,[38] that as a matter of law APT's policy manual did not create a reasonable expectation that Hoendermis was guaranteed progressive discipline.

### 3. There are genuine issues of material fact whether APT violated the covenant of good faith and fair dealing.

■■ Hoendermis argues that her termination violated the covenant of good faith and fair dealing because "other employees who had committed much more egregious actions were not disciplined." APT argues that it did not violate the covenant of good faith and fair dealing because Hoendermis was not similarly situated with the other employees who were not disciplined. We must determine whether the superior court properly found that there were no genuine issues of material fact precluding summary judgment on Hoendermis's claim for violation of the covenant of good faith and fair dealing.

■■ All at-will employment contracts are subject to the covenant of good faith and

fair dealing.[39] "[T]he covenant operates as a check on employers' traditional freedom to terminate at-will employment for any reason; . . . an employer may not terminate an at-will employee for reasons antithetical to the implied covenant."[40]

■■ The covenant contains both objective and subjective components.[41] An employer can breach either component.[42] The objective component of the covenant requires employers to "act in a manner that a reasonable person would regard as fair."[43] This includes not unfairly treating similarly situated employees disparately; in other words, employers must treat like employees alike.[44] An employer breaches the subjective component of the covenant when it "discharges an employee for the purpose of depriving him or her of one of the benefits of the contract."[45]

APT presented a prima facie case supporting summary judgment. Hoendermis's original complaint asserted that APT breached the covenant of good faith and fair dealing, but did not allege specifically that APT did not treat like employees alike. Phelps stated in her affidavit in support of APT's motion for summary judgment that APT terminated Hoendermis because she was unable to work with others and refused to communicate with Phelps, her immediate superior. We have held that a party has presented a prima facie case supporting summary judgment on a breach of covenant of good faith and fair dealing claim when a manager has stated in an affidavit that the employer terminated the employee for being unreliable.[46] Similarly here, Phelps's assertion that Hoendermis was terminated for an acceptable reason is enough to establish a prime facie case.

---

37. The attorney denied in his affidavit telling Hoendermis that progressive discipline was required.

38. 993 P.2d at 1032.

39. *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999) (citing *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979)).

40. *Id.*

41. *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002).

42. *Id.*

43. *Id.*

44. *Id.*

45. *Id.* (internal quotations omitted).

46. *See French v. Jadon, Inc.*, 911 P.2d 20, 24–25 (Alaska 1996).

We must next determine whether Hoendermis raised a genuine issue of material fact whether she was treated differently from similarly situated employees. In the context of the covenant of good faith and fair dealing, similarly situated employees are those who are members of the same class, as defined by job position and the nature of the alleged misconduct.[47] Hoendermis was terminated for allegedly failing to get along with other employees. In Hoendermis's affidavit supporting her opposition to summary judgment, she described several other APT employees and their alleged misconduct: one massage therapist had a romantic relationship with a patient; an exercise therapist assaulted another employee at work; a physical therapist had an inappropriate social relationship with a patient; a clinical director may have violated Medicaid rules; and two receptionists exhibited "unacceptable behavior" at work—one of whom required anger management counseling. In terms of job position, whether Hoendermis was similarly situated to any of these other employees is a question of fact, and the trier of fact will make that determination. At this stage, however, sufficient evidence exists in the record to successfully raise a genuine issue of material fact as to whether Hoendermis was similarly situated with other employees.

Hoendermis must also raise a genuine issue of material fact whether she was treated differently from similarly situated employees in an unfair manner. In her affidavit, Hoendermis alleged that none of the employees discussed above were terminated. She asserted that "Ms. Phelps did follow the disciplinary process with other employees" at APT. Hoendermis's statement that she was terminated when others were not for similar or more severe offenses raises a genuine issue of material fact whether she was disparately treated in an unfair manner—a violation of the covenant of good faith and fair dealing.

Because Hoendermis raised a genuine issue of material fact that she was similarly situated to other APT employees and that she was unfairly treated in a different man-

ner than those employees, we reverse the grant of summary judgment on the claim of breach of the covenant of good faith and fair dealing.

## IV. CONCLUSION

We REVERSE the grant of summary judgment on the overtime compensation claim because Hoendermis raised genuine issues of material fact whether she was an administrative or executive employee. We REVERSE the grant of summary judgment on the wrongful termination claim because Hoendermis raised a genuine issue of material fact whether APT violated the covenant of good faith and fair dealing. We REMAND for further proceedings.

---

**47.** *Mitchell v. Teck Cominco Alaska Inc.,* 193 P.3d 751, 761 (Alaska 2008).