*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JIM MORRISON, | ) | |
| | ) | Supreme Court No. S-14783 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-07423 CI |
| v. | ) | |
| | ) | O P I N I O N |
| NANA WORLEYPARSONS, LLC, | ) | |
| | ) | No. 6851 – December 13, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Joe P. Josephson, Joe P. Josephson Law Office, Anchorage, for Appellant. Thomas M. Daniel, Perkins Coie LLP, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.       INTRODUCTION

An at-will employee was placed on probation and subsequently terminated for making an inappropriate comment at a work party. The employee sued the employer for breach of contract and breach of the implied covenant of good faith and fair dealing. The superior court granted summary judgment on both counts. We affirm the superior court's judgment because the employee was an at-will employee, his termination was not

a breach of his employment contract, and he failed to present a genuine issue that the employer acted in bad faith.

## II.    FACTS AND PROCEEDINGS

Jim Morrison began working for NANA WorleyParsons, LLC (NANA) in 2006.  His offer letter stated that he was an at-will employee.  NANA's administrative procedures manual also stated that all employees serve at will.  Morrison served in a piping design position at a remote work site on the North Slope.

Morrison was demoted from his lead design position in 2009.  His supervisor notified Morrison that he was overstepping his authority by attempting to intervene in conflicts between co-workers, and Morrison indicated that he understood the reason for the demotion.

A few months later, Morrison's co-worker sent a long letter to Morrison's supervisor complaining that Morrison was neglecting his duties.  The supervisor decided to place Morrison on a performance improvement plan (PIP), which was outlined in a letter signed by both parties.  One of the PIP's complaints states, "[Y]ou were the agitator between employees; . . . [you had] unnecessary involvement in issues of no concern to you, . . . [and] you have not focused on your design duties.  Rather, you have contributed to the friction in the group and uneasiness that exists to this day."

The PIP listed six conditions that Morrison must follow to maintain his employment:

> A.    Effective immediately, <u>you will not dispose of any material in a place not clearly identified as the acceptable receptacle</u>.  You will comply, without deviation, with all environmental and safety policies and practices of BP and [NANA].

B.     Effective immediately, <u>you will inform me or Jeff when you arrive on the slope</u> for your hitch and when you depart.

C.     <u>You will document accurate billable hours worked</u>.

D.     <u>[Y]ou will attend each client morning meeting at 6:00 a.m.</u>  I will call your lead to verify timely attendance.

E.     From today forward, <u>you will report to your lead</u> when you arrive at your work station <u>each morning and leave each evening</u>.

F.     At the end of each hitch, <u>change out notes must be provided</u> in a comprehensive, accurate, and timely manner. Additionally, provide me or Jeff a copy of your change out notes on your change out (off) day.[1]

Four days after signing the PIP, Morrison attended a going-away party for a co-worker, Pat Mogford.  Morrison was sitting at a table with four women and another man.  Two of the women were discussing the excessive amount of male-oriented television programming.  Morrison mentioned a television show and commented that it discussed certain rude subjects, which he specifically described.  Mogford complained to Morrison's supervisor that she had been offended, and NANA decided to terminate Morrison's employment.

Morrison sued NANA, alleging two theories: breach of contract and breach of the implied covenant of good faith and fair dealing.  Following discovery, NANA moved for summary judgment on both theories, and the superior court granted NANA's motion.  Morrison now appeals.

---

[1]     Emphasis in original.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, "reading the record in the light most favorable to the non-moving party and making all reasonable inferences in its favor."[2] "Summary judgment is only appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."[3] "[T]he party opposing summary judgment must set forth specific facts showing genuine issues and cannot rest on mere allegations; moreover, such facts must arise from admissible evidence."[4] "To determine whether the nonmoving party can produce admissible evidence creating a genuine factual dispute, we will consider the affidavits, depositions, admissions, answers to interrogatories and similar material."[5]

## IV. DISCUSSION

### A. The Performance Improvement Plan Did Not Change Morrison's At-Will Employment Status.

Ordinarily, an at-will employee may be fired for any reason that does not violate the covenant of good faith and fair dealing.[6] Before the superior court, Morrison

---

[2]     *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003) (citing *Spindle v. Sisters of Providence in Wash.*, 61 P.3d 431, 436 (Alaska 2002)).

[3]     *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (citing *Odsather v. Richardson*, 96 P.3d 521, 523 n.2 (Alaska 2004)).

[4]     *Witt*, 75 P.3d at 1033 (quoting *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 144 (Alaska 1991) (internal quotation marks omitted); *Brady v. State*, 965 P.2d 1, 8 (Alaska 1998)).

[5]     *Schug v. Moore*, 233 P.3d 1114, 1116 (Alaska 2010) (quoting *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 59 (Alaska 2002)).

[6]     *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999) (quoting *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1130-31 (Alaska 1989)) (citing (continued...)

claimed that he was no longer an at-will employee because the PIP altered his employment status through promissory estoppel. A promissory estoppel claim requires proof of four elements:

> (1) an actual promise that induced action or forbearance; (2) the action induced was actually foreseen or reasonably foreseeable; (3) the action amounted to a substantial change in position; and (4) enforcement of the promise is necessary in the interest of justice.[7]

Morrison relied on a 1985 Ohio case, *Mers v. Dispatch Printing Co.*[8] But the superior court reasoned that *Mers* was distinguishable because the employer in that case expressly promised reinstatement to an employee if his criminal charges were favorably resolved, whereas NANA made no similar promise to Morrison. The court explained that there was no indication that Morrison should reasonably have expected that the PIP, which placed him on probation, would somehow elevate his employment status.

The superior court also noted that NANA's written Code of Conduct states, "All employment with NANA . . . is 'at-will.' . . . No statement or promise by a Supervisor, Department Head, Manager, or Human Resource Representative can be interpreted as a change in policy nor constitute an agreement with an employee." The court concluded that the PIP did not alter Morrison's at-will status.

---

[6]    (...continued)
*Eales v. Tanana Valley Medical-Surgical Grp., Inc.*, 663 P.2d 958, 959 (Alaska 1983)).

[7]    *Sea Hawk Seafoods, Inc. v. City of Valdez*, 282 P.3d 359, 366 (Alaska 2012) (internal quotation marks omitted).

[8]    483 N.E.2d 150 (Ohio 1985).

On appeal, Morrison argues that the PIP modified his at-will status because its stated purpose was "to provide [him] the opportunity to correct [his] behavior," and because it expressed optimism that Morrison would be able to meet the conditions. Thus, Morrison contends that the PIP was an implied promise of continued employment for a reasonable period of time to determine if he could meet the conditions and that NANA breached this promise by firing him so quickly after it issued this plan. Morrison also argues that he reasonably relied on this implied promise by continuing to work for NANA despite his power to terminate the employment relationship at will.

We conclude that the PIP did not alter Morrison's at-will status. The PIP did not contain any express promise of continued employment. As NANA points out, Carlson decided to give Morrison "one more chance" and "[i]nstead of firing Morrison . . . decided to place him on a performance improvement plan." As NANA maintains, it "merely informed Morrison that his failure to abide by the warnings in the PIP might result in further disciplinary action, including discharge." The PIP listed seven areas that needed correction, ranging from eliminating late arrivals and inflation of billable hours to "stop[ping his] contribution to friction in the group." This last area of correction included the specific clarification to Morrison that through his "unnecessary involvement in issues [of co-workers] that were of no concern to [him]," Morrison had "contributed to the friction of the group and uneasiness that exists to this day."

Morrison testified in his deposition that he understood Carlson to be telling him that he was "stirring the pot" among the employees and that "he needed to be cautious about what he said to his co-workers." Yet four days after Morrison received the PIP, and its warning of the need for correction in various areas, Morrison concedes that he brought up in a conversation with female co-workers the topic of a television show called "Manswers," describing it to his co-workers as "a male-oriented show that

purported to answer questions of interest to men, stupid questions like, how many beers does it take to kill a guy, or how large [do] a woman's breasts need to be to crush a beer can . . . ." The women at Morrison's table reported to Carlson that they were "offended" by Morrison's comments and "made to feel very uncomfortable" by them.

Moreover, recognizing the PIP as an enforceable promise of continued employment would also be inconsistent with NANA's procedures manual, which specifically stated that ordinary supervisors could not alter an employee's at-will status. We conclude that Morrison was an at-will employee who could be terminated for any reason, unless NANA violated the implied covenant of good faith and fair dealing.

**B.  Morrison's Termination Did Not Breach The Implied Covenant Of Good Faith And Fair Dealing**.

"All at-will employment contracts are subject to the covenant of good faith and fair dealing."[9]  This covenant contains both objective and subjective components.[10] The objective component requires employers to "act in a manner that a reasonable person would regard as fair," including fair treatment for employees who are similarly situated.[11] An employer violates the subjective component when it "discharges an employee for the purpose of depriving him or her of one of the benefits of the contract."[12]

Before the superior court, Morrison argued that another employee, Sherry Berry, was allowed to complete her normal shift following her termination, but Morrison was required to leave the Slope immediately.  On this issue, the superior court concluded

---

[9]    *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 356 (Alaska 2011).

[10]    *Id*.

[11]    *Id*. (quoting *Charles*, 55 P.3d at 62) (internal quotation marks omitted).

[12]    *Id*. (internal quotation marks omitted).

that Morrison had failed to show that: (1) Berry was a NANA employee; (2) Berry and Morrison were similarly situated; and (3) the reason for Berry's termination was similar to the reason for Morrison's termination. The court distinguished *Hoendermis v. Advanced Physical Therapy, Inc.*, where the employee made a sworn statement that she was terminated unfairly because other similarly situated employees who engaged in more severe conduct were not terminated.[13] The court concluded that Morrison failed to raise a genuine issue of material fact regarding any unfairness in the allegedly disparate treatment of Morrison and Berry.

On appeal, Morrison raises a somewhat different argument. He argues that NANA's failure to investigate the allegations against him breached the covenant of good faith and fair dealing. Morrison cites *Mitchell v. Teck Cominco Alaska Inc.* for the proposition that an investigation of employee misconduct must be conducted fairly.[14] In response, NANA contends that this court has rejected failure to investigate claims in *Ramsey v. City of Sand Point*[15] and *Belluomini v. Fred Meyer of Alaska, Inc.*[16]

In *Mitchell,* the employer's personnel policies required it to investigate any allegations of misconduct before terminating the employee.[17] We accordingly concluded that the employer may have violated the covenant of good faith and fair dealing by failing to conduct a fair investigation.[18]

---

[13]    251 P.3d at 352.

[14]    193 P.3d 751, 761 (Alaska 2008).

[15]    936 P.2d 126, 133 (Alaska 1997).

[16]    993 P.2d 1009, 1013 (Alaska 1999).

[17]    193 P.3d at 761.

[18]    *Id.*

In *Ramsey*, however, the employment contract expressly authorized the employer to terminate an employee without cause.[19] We accordingly held that the employee had no entitlement to an investigation that was protected by the covenant of good faith and fair dealing.[20] Likewise, in *Belluomini*, the employer's personnel policies requiring an investigation of sexual harassment claims did not apply to the employee's termination for insubordination, non-sexual harassment, and intimidation.[21] We accordingly affirmed a trial court order dismissing the employee's claim that the covenant required an investigation.[22]

In this case, NANA's policies and procedures did not require it to conduct an investigation before terminating an at-will employee. We conclude that this case is more similar to *Ramsey* and *Belluomini*, where investigations were not required, than to *Mitchell*, where the employer's policies explicitly required an investigation.

On appeal, Morrison does not argue that NANA violated the covenant of good faith and fair dealing by treating him differently than other employees or that NANA committed any other violation of public policy. We conclude that the superior court properly granted summary judgment in favor of NANA on this issue.

## V.    CONCLUSION

Morrison's termination did not violate his at-will employment contract or the covenant of good faith and fair dealing. We therefore AFFIRM the superior court's order granting summary judgment.

---

[19]    936 P.2d at 133.

[20]    *Id.*

[21]    993 P.2d at 1013-14.

[22]    *Id.* at 1014.