*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FRED BECKER V, | ) | |
| | ) | Supreme Court No. S-15314 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-05517 CI |
| v. | ) | |
| | ) | O P I N I O N |
| FRED MEYER STORES, INC., | ) | |
| | ) | No. 6962 – October 16, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin Marston, Judge.

Appearances: Kevin T. Fitzgerald, Ingaldson Fitzgerald, P.C., Anchorage, for Appellant. Daniel W. Hickey, Gruenstein & Hickey, Anchorage, and Susan K. Stahlfeld, Miller Nash LLP, Seattle, Washington, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

BOLGER, Justice.

I.    INTRODUCTION

Fred Becker V, a loss prevention manager employed by Fred Meyer Stores, Inc., was terminated in January 2012. He sued his former employer, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination. The superior court granted summary judgment in favor of Fred Meyer, concluding (1) that Fred Meyer's loss prevention policy manual did not create a contract

between Becker and Fred Meyer and Becker's employment was terminable at will and (2) that Becker had presented no evidence that he was treated differently from similarly situated employees with respect to the good faith and fair dealing claim. But because the record presents genuine issues of material fact regarding both claims, we reverse the superior court's summary judgment ruling.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Becker  was employed by Fred Meyer as a loss prevention manager for 17 years.  From July 2011 until January 13, 2012, Becker was assigned to the Northern Lights Fred Meyer store in Anchorage.

On January 3, 2012, Becker was on duty when he observed a man enter the store.  Becker watched him enter the photoelectronics department.  Becker then went to the loss prevention office and continued to observe the man through a security camera. When Becker saw him remove a stereo system from the shelf, Becker returned to the sales floor and went to the photoelectronics department.  There Becker watched the man carry the stereo system to the back aisle and remove its security wrap.  The man then picked up the stereo system, left the department, and proceeded toward the store exit. As the man passed the last point of sale and the electronic security devices, Becker identified himself as a loss prevention employee and told the man to stop. The man dropped the stereo system[1] and fled.  Becker pursued him even though he no longer had the stolen merchandise.

While the man was running, he tripped and fell in the Fred Meyer parking lot, dropping his cell phone.  Becker, thinking he could use the phone for identification

---

[1]    The parties dispute whether the stereo system was dropped inside or outside the door.

purposes, picked it up. The man got up and "came at" Becker, demanding that he return the phone. Becker then turned and threw the phone onto the roof of the Fred Meyer building. He later testified that he threw the phone "instinctively," out of fear of the man.

His phone now out of reach, the man ran into the parking lot and got into his car. Becker stepped off the sidewalk and followed him, noting the vehicle's license plate number as the man drove away.

Becker called the police, telling them about the theft and attempted arrest and providing descriptions of the man and his vehicle. Becker then went up to the store's roof, recovered the phone, and found photographs of the man on the phone. An Anchorage Police Department officer later arrived and made a report of the incident. The man was charged in connection with the theft later that month.

On January 13 Becker met with his supervisor, Devin Lilly, to discuss the January 3 incident. Lilly told Becker that he "should have handed the phone back to [the man]" rather than throwing it on the roof. He also claimed Becker had violated company policy by using a security camera to observe the man, by running on the sales floor, and by stepping off the sidewalk to pursue him. Lilly explained that, because of these violations and other past policy violations Becker had committed, Becker's employment was terminated effective immediately. According to Becker, he never received a verbal or written warning concerning any policy violation before he was terminated.

Becker appealed the termination decision to Scott Bringhurst, Fred Meyer's Director of Loss Prevention. Bringhurst considered Becker's appeal but concluded that "[t]he incident as a whole demonstrated extremely poor judgment on [Becker's] part" and "termination was . . . appropriate given the totality of the circumstances."

**B.      Proceedings**

Becker filed a complaint in the Anchorage superior court, claiming breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful termination.[2]  He claimed that Fred Meyer's loss prevention policies and procedures were part of his employment contract and that Fred Meyer breached those contractual provisions when it terminated his employment without notice.  Becker also alleged that Fred Meyer had treated him more harshly than other employees who committed policy violations similar to his own.

Fred Meyer moved for summary judgment.  The company argued that its loss prevention policy manual was not a binding contract and that, even if it were, Fred Meyer's actions did not violate company policy.  As to Becker's claim based on the covenant of good faith, Fred Meyer argued that Becker "cannot point to a single employee who . . . committed so many policy violations in a single stop, who was *not* immediately terminated."

The superior court agreed that Fred Meyer's policy manual was not a contract, and that Becker's employment was, therefore, terminable at will.  The court also concluded that Becker had failed to "raise a genuine issue of material fact whether he was treated in a disparate manner than other similarly situated employees," and, therefore, could not maintain a claim under the implied covenant of good faith and fair dealing.  Accordingly, the court granted the motion for summary judgment and dismissed Becker's claims.  Becker now appeals from this ruling.

---

[2]      Becker also originally claimed that Lilly made "false and defamatory" statements about him, but he later voluntarily dismissed his defamation claim.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo.[3] "In our review, we must determine whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[4] "Whether the evidence presented a genuine issue of material fact is a question of law,"[5] and "[w]e draw all factual inferences in favor of, and view the facts in the light most favorable to, the party against whom summary judgment was granted."[6]

## IV. DISCUSSION

### A. Breach Of Contract

"[E]mployee policy manuals may modify at-will employment agreements . . . ."[7] "The employer is bound by the representations in the manual when the manual's provisions create the reasonable expectation that employees have been granted certain rights."[8] "Because it is generally . . . a question of fact whether the

---

[3] *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 351 (Alaska 2011).

[4] *Id.* (quoting *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995)) (internal quotation marks omitted).

[5] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 696 (Alaska 2014) (quoting *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 349 (Alaska 2013)) (internal quotation marks omitted).

[6] *Hoendermis*, 251 P.3d at 351.

[7] *Id.* at 355 (quoting *Holland v. Union Oil Co. of Cal.*, 993 P.2d 1026, 1030 (Alaska 1999)) (internal quotation marks omitted).

[8] *Id.* (quoting *Parker v. Mat-Su Council on Prevention of Alcoholism & Drug Abuse*, 813 P.2d 665, 666 (Alaska 1991)) (internal quotation marks omitted); *see also Jones v. Cent. Peninsula Gen. Hosp.*, 779 P.2d 783, 788 (Alaska 1989) ("Employers

(continued...)

manual did modify the employment agreement,"[9] we will answer this question as a matter of law "[o]nly if reasonable minds could not differ in resolving this issue."[10]

Becker argues that the Fred Meyer loss prevention manual altered his at-will employment relationship. In particular, he argues that a reasonable person would believe that a loss prevention employee could be terminated without notice only for engaging in one of the six types of misconduct listed in the manual as a cause for immediate termination. Fred Meyer responds that because the manual contains hedging language suggesting that the listed grounds for termination without notice are non-exclusive, the manual does not create any expectation that an employee will be terminated only for the reasons listed in the manual.

Section 201 of the loss prevention manual provides, in relevant part:

> Every member of the Fred Meyer Loss Prevention department has duties and responsibilities that require absolute professionalism, maturity and tact. Many Loss Prevention functions require a degree of flexibility and access to controlled areas that necessitate a strict compliance to policy. Every moment on duty you represent the department and company. In fairness to all concerned, you need to know and understand what is expected, what is not permitted and the disciplinary action resulting from not complying with these directives. The following responsibilities are in

---

[8](...continued) should not be allowed to instill . . . reasonable expectations of job security in employees, and then withdraw the basis for those expectations when the employee's performance is no longer desired." (alteration in original) (quoting *Leikvold v. Valley View Cmty. Hosp.*, 688 P.2d 170 (Ariz. 1984)) (internal quotation marks omitted)).

[9]     *Holland*, 993 P.2d at 1031 (alteration in original) (internal quotation marks omitted).

[10]     *Id.* at 1031 n.28 (internal quotation marks omitted).

addition to the "Fred Meyer Employee Responsibilities" form, which applies to all employees of the company.

CAUSES FOR IMMEDIATE TERMINATION WITHOUT PRIOR WARNING

1.   Discussing investigations or other confidential matters with anyone not required to be involved or authorized to receive the information.

2.   Carrying or using any weapon on Fred Meyer property on or off duty. . . .

3.   Use of excessive force (physical or verbal) when making an arrest or while conducting an interview.

4.   Knowingly falsifying, omitting or misrepresenting any known facts (verbal or written) concerning an incident, audit, or crime with which you are directly or indirectly involved.

5.   Failure to report . . . and document a non-arrest or non-policy stop . . . .

6.   Continued pursuit of a suspect when they have either displayed a lethal weapon, entered a vehicle or have left Fred Meyer property.

Section 201 also lists 11 "causes for disciplinary action resulting in either suspension without pay, or termination." (Emphasis omitted.)

The manual also includes "Disciplinary Guidelines" for "Non-Arrest and Non-Policy Stops." These guidelines define two categories of stops that do not comply with Fred Meyer policy: "non-arrest apprehensions" and "non-policy stops." A non-arrest apprehension occurs when a customer is stopped but the customer does not have stolen merchandise. The manual distinguishes between non-arrest apprehensions that occur because of a failure to follow department procedures ("errors in judgment") and apprehensions that occur "due to circumstances that [the employee was] not aware of at the time of the apprehension" ("errors in fact"), and sets out a different progressive

disciplinary procedure for each type of non-arrest apprehension. For example, an employee's first non-arrest apprehension resulting from an error in judgment will result in a "[w]ritten warning including suspension of employment without pay"; a second violation within 24 months will result in discipline "[u]p to and including termination of employment."

A non-policy stop occurs when a stop does lead to an arrest and the recovery of stolen merchandise, but the loss prevention employee making the stop did not follow all applicable loss prevention apprehension procedures. In particular, the manual requires the loss prevention employee to ensure that five criteria are met before apprehending a suspect:

a. You must observe the suspect enter the section.

b. You must observe the suspect remove the merchandise from the display and know exactly what that item is.

c. If the item is concealed, you must observe that concealment and know exactly where it is.

d. You must maintain continuous observation of the suspect and merchandise, from the display until he/she exits the store. Once concealed, observation of the concealment area, (where the item is on the person), must be continuously observed.

e. You must, for purposes of safety, have another employee follow you out of the store to act as a witness and to provide assistance, if necessary. (Emphasis omitted.)

Non-policy stops are, according to the manual, less serious than either type of non-arrest apprehension. Accordingly, a non-policy stop "will be reviewed by the District Loss Prevention Manager . . . and will result in a verbal or written warning." However, all "[n]on-policy apprehensions must be verbally reported to [the] District Loss Prevention

Manager immediately after the arrest[;] failure to report can and will result in termination."

The disciplinary guidelines further provide that:

[A]ny of the following actions will result in immediate termination of employment:

A.     The [f]ailure to report any non-arrest apprehension within 1 hour of its occurrence.

B.     Any non-arrest apprehension made before the Loss Prevention person has been released from Phase 2 training.

C.     Any arrest made by a member of Loss Prevention who has not been released from Phase two where another qualified member of Loss Prevention was not physically present.

D.     Any gross disregard of Policy and or any grave lack of judgment that causes a non-arrest apprehension.

E.     Any continued or uncorrected lack of judgment / lack of fact which persists after re-training and education have been documented from previous incident. (Emphasis omitted.)

Fred Meyer argues that, notwithstanding the detailed procedures described above, "no employee could believe that they would always be entitled to progressive discipline" because the manual contains "hedging terms."  For example, the manual provides that "termination of employment is always an option when the judgment of the individuals involved and their actions are so grievous and severe, that it places Fred Meyer at increased risk [of] civil liability."  The manual also provides that the listed grounds for termination are "in addition to [those listed in] the 'Fred Meyer Employee Responsibilities' form."  Fred Meyer argues that this language makes it clear that the company retains discretion to terminate employment without cause.

In *Hoendermis v. Advanced Physical Therapy, Inc.*, we concluded that a policy manual did not give an employee a right to progressive discipline where the manual explicitly provided that the employer retained discretion not to follow the manual's discipline procedures.[11]  That manual also "expressly provided that all . . . employees were employed at will and could be discharged for any reason."[12]  Similarly, we concluded in *Holland v. Union Oil Co. of California* that a one-page memorandum, which included a non-exclusive list of prohibited conduct and provided that progressive discipline would be provided "[i]n most instances," did not create a right to progressive discipline.[13]

In contrast, we held in *Jones v. Central Peninsula General Hospital* that a policy manual setting out "fifteen non-exclusive categories of acts or omissions that may result in termination for cause" was, as a matter of law, incorporated into an employment contract.[14]  Despite a one-sentence disclaimer stating that the manual "is not a contract of employment nor is it incorporated in any contract of employment,"[15] the manual "create[d] the impression . . . that employees are to be provided with certain job protections."[16]  And in *Parker v. Mat-Su Council on Prevention of Alcoholism and Drug Abuse*, we concluded that an employer's "personnel manual which outline[d] various

---

[11]    251 P.3d at 355-56.

[12]    *Id.* at 355.

[13]    993 P.2d at 1032.

[14]    779 P.2d 783, 788-89 (Alaska 1989).

[15]    *Id.* at 787.

[16]    *Id.* at 788.

disciplinary polices and procedures and provide[d] that involuntary termination will occur only for cause" modified an employment agreement.[14]

This case falls somewhere between these precedents. Fred Meyer's policy manual does not include language indicating that it may decline to follow its disciplinary procedures as it pleases. Although it is true that the manual provides that "termination of employment is always an option when the judgment of the individuals involved and their actions are so grievous and severe, that it places Fred Meyer at increased risk [of] civil liability," that language merely creates an exception to progressive discipline in cases where an employee's actions have exposed Fred Meyer to a risk of liability; it does not render the disciplinary procedures discretionary in all instances. And given the sheer level of detail contained in the manual, any language suggesting that Fred Meyer policy is not legally binding would need to be very prominent to be effective.[15]

It is also true, as Fred Meyer points out, that the list of "causes for immediate termination without prior warning" is "in addition to the 'Fred Meyer Employee Responsibilities' form." (Emphasis omitted.) But that language does not suggest that Fred Meyer may terminate employment without notice for any reason.[16] It merely emphasizes that another Fred Meyer policy form, which also applies to loss prevention employees, lists other reasons for termination without warning.

_____

[14]    813 P.2d 665, 666-67 (Alaska 1991).

[15]    *See Jones*, 779 P.2d at 788 ("[A] one-sentence disclaimer, followed by 85 pages of detailed text covering policies, rules, regulations, and definitions, does not unambiguously and conspicuously inform the employee that the manual is not part of the employee's contract of employment.").

[16]    *Cf. Holland*, 993 P.2d at 1032 (explaining that a one-page memorandum, which included a non-exclusive list of prohibited conduct and provided that progressive discipline would be provided "[i]n most instances," did not create a right to progressive discipline).

Therefore, there is a triable question of fact whether a reasonable person would believe that the provisions of the loss prevention policy manual are binding.

Fred Meyer argues that, even if the policy manual does give Becker enforceable contract rights, its decision to terminate Becker's employment without notice was justified by Becker's alleged misconduct. But the superior court did not reach this question in its order granting summary judgment.[17] We conclude that this issue should first be addressed by the superior court.

**B.      Implied Covenant Of Good Faith And Fair Dealing**

All employment contracts — even those terminable at will — are subject to an implied covenant of good faith and fair dealing.[18] "The covenant contains both objective and subjective components."[19] The objective component "requires employers to act in a manner that a reasonable person would regard as fair."[20] For example, an employer may not treat similarly situated employees differently.[21] An employer breaches

---

[17]      The superior court wrote: "Because the Court finds that the Manual did not constitute a contract altering Becker's at-will employment relationship, the Court does not need to address the issue of whether [Fred Meyer] complied with its disciplinary procedures."

[18]      *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 356 (Alaska 2011).

[19]      *Id.*

[20]      *Id.* (quoting *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002)) (internal quotation marks omitted).

[21]      *Id.* Employees are similarly situated if they are "members of the same class, as defined by job position and the nature of the alleged misconduct." *Id.* at 357.

the subjective component, on the other hand, if it acts with a bad-faith purpose.[22] "[G]enerally whether the covenant has been breached is a question for the trier of fact."[23]

Becker argues that Fred Meyer violated the objective component of the covenant. He alleges that several employees who committed similar or more serious violations of the loss prevention manual were not terminated without notice but received less severe discipline. Fred Meyer responds that Becker presented "no evidence of any employee . . . who did anything remotely like what Becker did on January 3."

To support his allegation that Fred Meyer treated him differently from other, similarly situated employees, Becker notes that during discovery he identified 29 Fred Meyer employees who committed similar violations but were not terminated. He also notes that he testified about some of those employees during his deposition and that Devin Lilly maintained in an affidavit that "on numerous occasions there have been Loss Prevention employees committing non-apprehension arrests, which are considered far more egregious than non-policy stops, who were not terminated without prior notice."

The superior court concluded that this evidence was not sufficient to defeat summary judgment. Although the court acknowledged that Becker had identified other employees who, he alleged, were similarly situated, "he did not describe in any detail how these other employees' conduct correlated to his own alleged conduct or that there was any disparate treatment between Fred Meyer's disciplinary action against him and these other employees."

---

[22]     *Willard v. Khotol Servs. Corp.*, 171 P.3d 108, 113-14 (Alaska 2007).

[23]     *Mills v. Hankla*, 297 P.3d 158, 167 (Alaska 2013) (alteration in original) (quoting *Okpik v. City of Barrow*, 230 P.3d 672, 681 (Alaska 2010)) (internal quotation marks omitted).

In *Hoendermis*, an employee "was terminated for allegedly failing to get along with other employees."[24] We concluded that Hoendermis's affidavit, which alleged that several other employees had engaged in various forms of misconduct without their employment being terminated, was sufficient to raise an issue of material fact whether she was treated differently from similarly situated employees.[25]

The superior court concluded that Becker's case was distinguishable from *Hoendermis* because Becker did not describe in detail the misconduct committed by the other employees or identify an employee who "committed a non-policy stop approaching the sheer number of violations that he is alleged to have committed." But in *Hoendermis*, we did not suggest that a certain level of detail about other employees' misconduct was required to defeat summary judgment.[26]

Moreover, Becker did describe in detail misconduct committed by two other loss prevention employees, and the discipline to which each of them was subjected. Becker alleged that one employee was not terminated after a non-arrest apprehension, which, according to the policy manual, is more serious than a non-policy stop. And Becker alleged that a second employee was not terminated after committing a non-arrest apprehension; rather, the employee was suspended and transferred out of the loss prevention department. Therefore, the record reflects that Becker did provide evidence about the specific circumstances of some of the other employees he identified.

Nor does *Hoendermis* require, as Fred Meyer suggests, that an employee claiming disparate treatment show that another employee with exactly the same job

---

[24]     251 P.3d at 357.

[25]     *Id.*

[26]     *See id.*

description was treated differently after committing exactly the same misconduct.[27] To the contrary, the evidence in *Hoendermis* indicated that employees in varying positions had committed a wide range of misconduct, from engaging in a romantic relationship with a patient to assaulting another employee at work.[28] We found that Hoendermis, who was discharged for failing to "get along with other individuals employed in the clinic,"[26] had been treated differently and that this was sufficient to prevent summary judgment.[27] We concluded that "whether Hoendermis was similarly situated to any of these other employees is a question of fact" to be determined at trial.[28] Therefore, Becker was not required to identify an employee who committed precisely the same misconduct as he did in order to withstand summary judgment.

And while it is true that Fred Meyer presented evidence indicating that some employees were terminated for committing policy violations, that evidence merely points to the existence of a factual dispute; it does not establish that summary judgment was warranted.

For these reasons, we conclude that Becker has raised a material question of fact whether Fred Meyer breached the objective component of the implied covenant of good faith and fair dealing.[29]

---

[27]    *Id*. at 356-57.

[28]    *Id*. at 357.

[26]    *Id*. at 350.

[27]    *Id*. at 357.

[28]    *Id*.

[29]    Becker also argues that the court should not have dismissed his wrongful termination claim. The superior court dismissed the claim as "premised on his first two

(continued...)

## V.    CONCLUSION

The judgment of the superior court is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[29](...continued)
causes of action: breach of contract and breach of the covenant of good faith and fair dealing."  Because a genuine issue of material fact exists for both of these underlying claims, however, Becker's wrongful termination claim remains unresolved.